Brent A. MATTHEWS, Plaintiff–
Respondent,

v.

DIRECTOR OF REVENUE, State of
Missouri, Defendant–Appellant.

No. 24437.

Missouri Court of Appeals,
Southern District,
Division Two.

March 28, 2002.

Jeremiah W. (Jay) Nixon, Attorney General, Todd Stanton Jones, Assistant Attorney General, Jefferson City, for Appellant.

Daniel T. Moore, John M. Albright, Moore & Walsh, L.L.P., Poplar Bluff, for Respondent.

PHILLIP R. GARRISON, Presiding Judge.

The Director of Revenue ("Director") appeals from a judgment reinstating Brent A. Matthews' ("Matthews") driving privileges. Matthews' license had been suspended pursuant to § 302.304 [1] because of his alleged accumulation of eight or more points within an eighteen-month period. The trial court's judgment is reversed and remanded with directions.

On March 13, 2001, Director issued a thirty-day suspension of Matthews' driving privileges pursuant to § 302.304. The suspension was based on Matthews' alleged conviction of three speeding-related driving offenses between October 1999 and March 2001. Specifically, the offenses included speeding convictions in Missouri on October 28, 1999, Wyoming on August 15, 2000, and Nebraska on March 5, 2001. Director determined each offense warranted a three-point assessment, for a total of nine points. Matthews requested a judicial review of the administrative driver's license suspension, and claimed that he had not accumulated a sufficient number of points within the prescribed time to justify the suspension of his license.

At the hearing, Director offered Exhibit A, which contained Matthews' driving record maintained by the Missouri Department of Revenue, as well as documentation of the alleged convictions from Missouri, Wyoming, and Nebraska. While Matthews agreed that the exhibit itself was admissible under § 302.312,[2] he did argue

---

1. All statutory references are to RSMo (2000), unless otherwise noted.

2. According to § 302.312, "[c]opies of all papers, documents, and records lawfully depos-

the contents of the exhibit were insufficient to sustain Director's burden of proof. Matthews did not challenge the sufficiency of the Missouri conviction, but did challenge the other two.

On July 10, 2001, the trial court entered its judgment and reversed Director's suspension of Matthews' license, finding that there was "insufficient evidence to support the suspension of [Matthews'] driving privileges." This appeal followed.

Director's only point on appeal is that the trial court erred in reversing the suspension of Matthews' driving privileges because its judgment was not supported by substantial evidence and was against the weight of the evidence. Director claims that Matthews failed to provide any evidence to rebut the contents of Exhibit A, which Director alleges showed that he had accumulated more than eight points in an eighteen-month period.

"[W]e will affirm the decision of the trial court to reinstate [Matthews'] driving privileges unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Hobbs v. Director of Revenue*, 51 S.W.3d 874, 875 (Mo.App. E.D.2001).

The basis for Director's argument is that Matthews failed to meet either his burden of persuasion *or* his burden of producing evidence. Director's reasoning is based on a recent Missouri Supreme Court case, in which the court outlined the burdens each party carries in such cases. *See Kinzenbaw v. Director of Revenue*, 62 S.W.3d 49, 51 (Mo. banc 2001). In *Kinzenbaw*, the court held that the driver "has the burden of producing evidence that he is qualified for a driver's license, and the

director has the burden of producing evidence that he is not. The director meets her burden by introducing the administrative record. The burden of persuasion, as distinct from the burden of producing evidence, is at all times on [the driver] and never shifts. It is [the driver's] burden to prove that the facts on which the director relied in denying the license are not true or are legally insufficient to support the denial or suspension of the license." *Id.* As an example, the court said that the driver has the burden to produce evidence and persuade the trial court that he is not the person shown convicted in the record. *Id.* at 55.

■ At the hearing, Director introduced Exhibit A showing three convictions, which on its face, was sufficient to meet her burden under *Kinzenbaw*. *Id.* at 54. Matthews presented no evidence at the hearing, but argued that the records of the Wyoming and Nebraska convictions were insufficient. As for the alleged Wyoming conviction, he challenged it on two bases. He claimed the record was insufficient in that it failed to indicate whether the offense was a statutory or municipal offense, and that it failed to demonstrate whether the vehicle involved was a private or commercial vehicle, both of which Matthews argued might affect the point assessment.

Regarding the claim that it is unclear whether it was a statutory or municipal offense, the Wyoming court record references a statute and indicates that Matthews was cited for traveling 91 miles per hour in a 75 mile per hour zone on Interstate 80. The statute number is given as 31–5–301(b)(iii), which is indeed a Wyoming state statute that specifies a 75 mile per hour speed limit on interstate highways in the state. *See* Wyo. Stat. § 31–5–

---

ited or filed in the offices of the department of revenue ... and copies of any records, properly certified by the appropriate custodian or

the director, shall be admissible as evidence in all courts of this state and in all administrative proceedings."

301. Under § 302.160, Director is authorized to assess points for a violation that, "if committed in [Missouri], would result in the assessment of points." In Missouri, three points are assessed for speeding in violation of a state statute. *See* § 302.302.1(2).

As for his claim that the Wyoming documentation does not clearly identify whether the vehicle was commercial or private, which, according to Matthews, would affect the assessment of points, he is relying on cases that discuss earlier versions of §§ 304.009 and 304.010. Prior to changes in 1996, these statutes contained references to, and made distinctions based upon, the gross weight of a vehicle. *See* §§ 304.009 and 304.010, RSMo Supp.1995. Under these earlier statutes, speed limits varied based upon the gross weight of the vehicle, and case law interpreting those statutes stated that "[i]f the vehicle is a truck, then it is necessary to know the 'registered gross weight' because the maximum speed limits set forth in §§ 304.009 and 304.010 are lower on certain highways for vehicles with registered gross weights exceeding twenty-four thousand pounds." *Schrimpf v. Director of Revenue*, 889 S.W.2d 171, 174–75 (Mo.App. W.D.1994).

Under those statutes, whether a vehicle was commercial or private was also an important distinction because, under one definition, a vehicle was commercial if it had "a gross combination weight rating of twenty-six thousand one or more pounds." § 302.700.2(6)(a). Therefore, if a vehicle were commercial, the lower speed limits from the earlier versions of §§ 304.009 and 304.010 would apply. *See Meyer v. Director of Revenue*, 909 S.W.2d 397, 401 (Mo.App. W.D.1995). However, while the definition of commercial vehicle has not changed, §§ 304.009 and 304.010 have changed substantially, and Missouri no longer has statutes under which speed lim-

its vary based upon gross weight of a vehicle. Thus, a commercial/private distinction is no longer necessary under Missouri law as it relates to speeding violations. Therefore, as stated above, a three-point assessment by Director was appropriate for the violation.

 Matthews also argues that the Wyoming documentation is defective because it does not clearly identify the final disposition of the case. He claims that "the only description of the final disposition of the case is 'guilty disposition,' which [according to Matthews] seems more descriptive of ... [his] mood when he appeared in court than an action taken by the court." First, we note that this issue was not raised before the trial court. "In Missouri, parties are estopped from raising issues on appeal which were not raised at the trial court level." *Walker v. Walker*, 954 S.W.2d 425, 428 (Mo.App. E.D. 1997). Additionally, this contention has no merit. The Wyoming court's notation of a "guilty disposition" combined with the reference to the penalty or sentence of a fine, clearly represents a conviction. *See Allen v. LaPage*, 579 S.W.2d 391, 394 (Mo.App. E.D.1979); *see also State v. Prell*, 35 S.W.3d 447, 450 (Mo.App. W.D.2000). Overall, the insufficiencies claimed by Matthews to exist in the Wyoming conviction are unfounded.

 For the alleged conviction in Nebraska, Matthews argued at the hearing that the record was insufficient because it referenced a driver's license permit number that did not match his Missouri Department of Revenue license number, a number that, according to Matthews, was not his, "pursuant to any of the other records present." He also alleged that the Nebraska record was insufficient because it was not clear as to whether it was a conviction or an administrative adjudication, and because it noted that Nebraska

assessed no points and placed him on probation. Thus, Matthews argued that there was no conviction in Nebraska.

The Nebraska documentation consists of two pages. The first page is a summary page and contains Matthews' name and address, date of birth, that he was cited for speeding 11–15 miles per hour over the posted speed limit on an interstate and that he was placed on probation with zero points assessed. In addition, the driver's license or permit number listed on the first page is H12826150, which is different from the driver's license number listed on his Missouri driving record. The copy of the second page of the documentation presented in the legal file here, which is the abstract of the Nebraska court's judgment, is difficult to read. Among the items that are readable are Matthews' name and address, date of birth, that he was assessed fines and costs totaling $96, that he pled guilty and was found guilty of a statute or ordinance described as speeding 11–15 miles per hour over the posted limited on an interstate, and that the judgment on March 5, 2001 resulted in probation. The items that appear on both the first page and the second page, such as his name, address, and date of birth, are the same on both pages. However, the license number listed on the second page is not completely legible, but is definitely not the same as noted on the first page. The first three numbers of the license number on the second page are 494, which are the first three numbers of Matthews' license number in his Missouri driving record.

Why the license number is different from page one to page two is not explained. However, the other pertinent pieces of information that identify Matthews, as well as the violation and judgment, are not in conflict. Thus, unlike the cases to which Matthews directs our attention, we do not have a situation where the documentation is either so illegible as to not be considered valid evidence or where conflicting entries indicate a conviction on one page, but no conviction on another. *See Campbell v. Director of Revenue,* 953 S.W.2d 184, 186 (Mo.App. W.D.1997); *Callahan v. Director of Revenue,* 878 S.W.2d 826, 826–27 (Mo.App. E.D.1993).

The license number is one way to identify the driver of a vehicle; the driver's name and address are another. Matthews' name and address on the Nebraska documentation are the same that appear on all of the other documentation, including that from Wyoming and that from the Missouri conviction he does not contest. Identifying the driver who was cited and convicted of a violation is pertinent information, but regardless of the discrepancy in the license number, there was sufficient evidence to show that Matthews was the driver. *See Allen,* 579 S.W.2d at 394.

At the hearing, Matthews also argued that the other portions of the Nebraska documentation showed that no actual conviction occurred in Nebraska. The Nebraska documentation indicates that Matthews pled and was found guilty of the violation, was fined, and received a judgment of three months probation for which Nebraska assessed no points. Therefore, Matthews contends that because there was no indication that any sentence involving jail time or a fine was imposed, there could not be a conviction under Missouri law.

Matthews is correct that if one is found guilty of an offense, placed on probation and received a suspended imposition of sentence ("SIS"), Missouri law does not consider it a conviction. *See Prell,* 35 S.W.3d at 450. However, it is a conviction under Missouri law if one is found guilty, placed on probation and received a suspended execution of sentence ("SES"). *See Yale v. City of Independence,* 846 S.W.2d 193, 195 (Mo. banc 1993). Here,

Matthews received the equivalent of an SES, not an SIS. The Nebraska documentation indicates that he was assessed $96 in fines and costs. Therefore, the evidence of a Nebraska conviction was sufficient.

We grant Director's point, finding that the evidence was sufficient to show that Matthews had accumulated eight or more points in an eighteen-month period, allowing Director to suspend his license. *See* § 302.304.3. Further, we find that Matthews failed to meet his burden, under *Kinzenbaw,* to produce evidence that would "prove that the facts on which ... [D]irector relied in denying the license are not true or are legally insufficient to support the denial or suspension of the license." 62 S.W.3d at 51.

The judgment is reversed and remanded to the trial court with instructions for it to reinstate Director's thirty-day suspension of Matthews' driving privileges.

PREWITT, J., and PARRISH, J., concur.